OPINION
Appellant Michael Dewayne Stewart appeals a judgment of the Stark County Common Pleas Court convicting him of rape (R.C. 2907.02(A)(2)):
 ASSIGNMENTS OF ERROR APPELLANT'S CONVICTION ON ONE COUNT OF RAPE IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM POSSIBLE SENTENCE.
 THE TRIAL COURT ERRED IN FINDING DEFENDANT-APPELLANT A SEXUAL PREDATOR.
Appellant and Ruth Stewart were married in 1996 in Las Vegas, Nevada. They eventually moved to Canton. When the couple separated, Ruth moved to an apartment on 12th Street, N.W., in Canton. She lived with her step-son, Joshua, who was appellant's son with a different woman. Appellant lived on the streets, visiting his son periodically at the apartment.
Ruth was frightened of appellant, and never stayed in the apartment with him by herself. She was often at work when appellant arrived, and Joshua would let him in the apartment. Because Ruth was afraid of appellant, she often would stay at a neighbor's apartment until appellant left. If Ruth came home when appellant was at the apartment, arguments would typically ensue.
Ruth admitted that she had sex with appellant within a month of the rape. However, she testified that she had sex with him only as a way to get him to leave the apartment.
Eventually, Ruth realized that she could not care for Joshua, and made arrangements to reunite him with his mother in Louisiana. She told appellant about this plan, and told him that he should come and see Joshua before he went to Louisiana. When appellant finally responded to Ruth's message, she told him that Joshua was already with his mother. Appellant became angry, and told her he was coming over to talk. She told him to stay away.
On the evening of August 23, 1999, Ruth spent the evening with her neighbor watching television. She returned to her apartment to go to bed. She slept in the living room, as she had given the bedroom to Joshua. She had fixed the sofa as a bed. She also felt safer because in the living room, she was closer to the front door, and could hear anyone approaching the apartment. After Ruth put on her pajamas and proceeded to the living room to sleep, appellant entered the apartment through the back door, and told her that he wanted to talk. Ruth replied that she did not want to talk to him, but appellant told her that he was homeless, and needed a place to stay.
Instead of arguing, Ruth went into her room to get a bag. She began packing her clothes, telling appellant he could have the apartment, and she was leaving. When she came out of her room, appellant grabbed her from behind. He put a pencil to her throat, which broke when Ruth struggled with him. He then retrieved a pair of scissors, putting them to her throat. Appellant told her that he would shove the scissors in her neck if she screamed. Appellant tossed her to the floor, bent her over the sofa, and sat on her back. Ruth pleaded with appellant to get off of her back, as she just had surgery, and could not breathe. Appellant replied that he did not care. Eventually, Ruth got appellant off her by telling him that she had to go to the bathroom. When she was done, appellant notified her that he wanted to have sex with her.
Ruth told appellant that she was on her menstrual cycle. Appellant replied that he did not care. He tried to get Ruth to kiss him, but she refused. Appellant ordered her to take a bath, and waited with the scissors until she complied.
After finishing her bath, Ruth repeated to appellant that she did not want to have sex because she was having her period. Appellant ordered her to remove her clothes, and he was still holding the scissors. Ruth took her clothes off, and appellant engaged in vaginal intercourse with her on the sofa-bed. Ruth did not struggle during the rape, as appellant would hit her, and smother her with a pillow. When appellant was done, she noticed that blood covered the sheet on the sofa. At 5:00 in the morning, when it was time for her to go to work, Ruth left the apartment.
Ruth immediately went to her neighbor's apartment. She was frantic and crying, and ran into the apartment, slamming the door and locking it behind her. The neighbor could not understand what Ruth was saying. Finally, Ruth was able to tell her friend that appellant was upstairs, had raped her, and she needed to call the police. After calling the police, the neighbor took Ruth to the emergency room at Aultman Hospital.
Canton Police officer Victor George went to Aultman Hospital to interview Ruth. She was very upset, afraid, and visibly shaken. He noticed marks on her neck, caused by the pencil and scissors. After taking photos, George proceeded to the apartment.
At the apartment, Officer Scott Printz went through the front door, while George proceeded to the back door. George hear someone coming down the stairs. Upon seeing George, appellant immediately changed direction and proceeded to a middle apartment. Appellant was nevertheless apprehended and taken to the police station to be interviewed.
Appellant was indicted by the Stark County Grand Jury with one count of rape and one count of aggravated burglary. The case proceeded to trial in the Stark County Common Pleas Court.
Appellant testified at trial that he paged Ruth and asked to come to her apartment to talk. According to appellant, she agreed, and let him in the apartment when he arrived. Appellant testified that after going to the bathroom, Ruth told him that her period had started, and she didn't want him starting anything and "pissing her off." On cross-examination, appellant stated that Ruth showed him an attitude, because most women have an attitude during their period. Appellant asked about Joshua, and then inquired as to whether she was seeing anyone. According to appellant, Ruth once again returned to the bathroom. He testified that while waiting for her to return, he took his shirt off. He claimed that Ruth saw a hickey on his shoulder, and he admitted to her he had been with a girlfriend. However, he stated that he told Ruth he was tired of living on the streets, and wanted to come home. According to appellant, Ruth slapped him and went to the bedroom to pack her clothes. Instead of leaving, appellant testified that Ruth returned, sat next to him, and asked if he wanted to have sex with her. Appellant told her that he wouldn't mind, so she put a blanket on the sofa, and the two engaged in consensual sexual intercourse. He testified that she then took a bath, and attended to household chores until it was time for her to go work. He testified that he slept on the sofa until she woke him up when she left for work. When asked why Ruth would fabricate a rape allegation, appellant responded that he had caught her cheating on him on numerous occasions, but eventually got tired of it, and moved away. Appellant maintained that he was not angry with her for cheating, especially as he had children with other women during their marriage.
During deliberations, the jury reported to the court that they had reached a verdict on one charge, but could not reach a verdict on the other. The court instructed the jury, and sent them back for further deliberations. The jury then returned with a verdict of not guilty on the charge of aggravated burglary, but guilty on the charge of rape. The court convicted appellant as charged. After a separate hearing, the court sentenced appellant to ten years incarceration, and classified appellant as a sexual predator pursuant to R.C. Chapter 2950.
 I
Appellant argues that the judgment convicting him of rape is against the manifest weight and sufficiency of the evidence.
R.C. 2907.02 (A)(2), states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The factual issue in this case was whether appellant compelled Ruth to submit by force or threat of force, or whether she consented to having sex with appellant.
In considering a claim of sufficiency of the evidence, the question is whether the case may go to the jury, or whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy, and whether the evidence is legally sufficient to sustain the verdict is the question of law. Id.
Although a court of appeals may determine that a judgment is sustained by sufficient evidence, the court may nevertheless conclude the judgment is against the weight of the evidence. Id. at 387. The court reviews the entire record, weighs the evidence and reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Id. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against conviction. Id.
In the instant case, Ruth Stewart's testimony provided sufficient evidence that appellant had committed the crime of rape. She testified that appellant grabbed her from behind, threatened to stab her in the throat if she screamed, and proceeded to have sexual intercourse with her, despite the fact she told him she was having her period, and did not want to have sex with him. Under the guise of leaving for work, Ruth went to her friend downstairs, and called the police. She was visibly upset both in her contacts with her friend, and with the police.
As to his claim that the judgment is against the manifest weight of the evidence, appellant argues that the jury lost it way in believing her testimony, rather than his contradictory testimony. Appellant attempts to discredit her testimony on the basis that she was lying about whether he lived with her at the 12th Street apartment. Appellant presented two witnesses who testified that he had lived at the apartment with Ruth. However, the evidence was undisputed that appellant was basically homeless and living on the streets, but spent a lot of time at the apartment visiting his son. Therefore, the question of whether he actually lived at the apartment did not have any bearing on the events of August 23. He further argues in his brief that Ruth laid down a mattress pad before she had intercourse with appellant, which a woman being raped would not take the time to do. However, she testified that she had made the couch into a bed, as she had been sleeping in the living room. The jury did not lose its way in believing Ruth's version of the facts, rather than appellant's version.
The first assignment of error is overruled.
 II
Appellant argues that the court erred in imposing the maximum sentence, as it is not supported by the record. Appellant argues that the findings of the court in support of the maximum sentenced are not supported by the evidence.
The court found that pursuant to R.C. 2929.14 (B), the shortest prison term would demean the seriousness of appellant's conduct and would not adequately protect the public from future crimes committed by appellant. The court further found that pursuant to R.C. 2929.14(C), appellant had committed the worst form of the offense, and poses the greatest likelihood of recidivism.
The court stated on the record that appellant had at least two prior felony convictions from outside the State of Ohio, and had been incarcerated on these two occasions. Although appellant argues these are not relevant since they are not sex offenses, the criminal history of an offender is not narrowly limited to the proclivity to commit a particular type of crime. The court correctly considered appellant's past criminal history in determining the appropriate sentence.
Appellant also argues that the court erred in finding that this was the worst form of the offense, as he maintains that his rendition of the facts is the correct version. First, the fact that there is a hypothetical worse rape than the instant one does not prevent a court from finding that the offense was one of the worst forms of the offense. See State v. Boshko (2000), 139 Ohio St.3d 827, 837 (the trial court does not have to imagine the most abhorrent form of rape to conclude that the defendant has committed the worst form of the offense). As found by the court, appellant's relationship with the victim facilitated the offense. A pattern of abuse was demonstrated to the court, as the victim was undoubtedly afraid of him. Tr. 19. The court stated on the record that it was apparent to the court during her testimony that Ruth Stewart continued to be afraid of appellant. The court further found there had been prior abuse of this victim, and appellant threatened her with death and other bodily harm.
The second assignment of error is overruled.
 III
Appellant argues that the court's finding that he qualified as a sexual predator was not supported by clear and convincing evidence that he was likely to reoffend.
In determining whether an offender is a sexual predator, the court must consider a number of statutory factors:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09
In the instant case, in its classification judgment entry, the court reviewed the relevant facts of the case. Appellant had a criminal record, demonstrating an inability to conform his conduct with the dictates of society. His relationship with the victim facilitated the crime, and there was a demonstrated pattern of abuse of the victim by appellant. The abuse was both physical and emotional. The court noted that the particular facts of the rape demonstrated extreme cruelty to the victim by holding a pair of scissors and a pencil to her throat, threatening her with bodily harm and potentially with death if she resisted. The court noted that the victim was visibly scared of appellant throughout the trial, and her demeanor on the witness stand showed psychological and emotional trauma.
The court did not err in classifying appellant as a sexual predator.
The third assignment of error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court is affirmed. Costs to appellant.
By GWIN, P.J., FARMER, J., and WISE, J., concur.